**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALPHONSO DUKES,**

                                        **Plaintiff,**

              **v.**                                                        **1:08-CV-479**
                                                                              **(FJS/DRH)**
**THE TROY HOUSING AUTHORITY; THE**
**CITY OF TROY; JASON C. STOCKLAS,**
**Individually and as Agent, Servant and/or**
**Employee of the Troy Housing Authority**
**and/or as Agent, Servant and/or Employee of**
**the City of Troy; and MATTHEW D.**
**MCLAUGHLIN, Individually and as Agent,**
**Servant and/or Employee of the Troy Housing**
**Authority and/or as Agent, Servant and/or**
**Employee of the City of Troy,**

                                        **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**HARRIS, CONWAY & DONOVAN, PLLC**           **MICHAEL C. CONWAY, ESQ.**
The Patroon Building
5 Clinton Square
Albany, New York 12207
Attorneys for Plaintiff

**BAILEY, KELLEHER & JOHNSON, PC**           **NANNETTE R. KELLEHER, ESQ.**
Pine West Plaza 5
Suite 507
Washington Avenue Extension
Albany, New York 12205
Attorneys for Defendant City of Troy

**REHFUSS, LIGUORI & ASSOCIATES, PC**        **STEPHEN J. REHFUSS, ESQ.**
40 British American Boulevard
Latham, New York 12110
Attorneys for Defendants Troy Housing
Authority, Jason C. Stocklas, and
Matthew D. McLaughlin

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court is Defendant City of Troy's ("Troy") motion for summary judgment on both its cross-claim and Plaintiff's claims. *See* Dkt. No. 38-1. Also pending is Defendant Troy Housing Authority ("THA"),[1] Defendant Jason C. Stocklas ("Stocklas"), and Defendant Matthew D. McLaughlin's ("McLaughlin") motion for summary judgment with respect to Plaintiff's claims and co-Defendant Troy's cross-claim for indemnification/contribution. *See* Dkt. No. 36-1.

Defendant Troy argues that it is entitled to summary judgment because Plaintiff has failed to demonstrate that material questions of fact exist regarding the claims that he has asserted against it and because Defendant THA has failed to show that Defendant Troy may be held accountable for Defendant Stocklas' off-duty actions. *See* Dkt. No. 59.

Defendant THA asserts that it is entitled to summary judgment because (1) there is no evidence establishing municipal liability pursuant to 28 U.S.C. § 1983; (2) Plaintiff has failed to establish an equal protection claim because he failed to show that he was treated differently than other similarly situated individuals; (3) Plaintiff is collaterally estopped from asserting that his arrest lacked probable cause; (4) the evidence does not support a finding that Defendant THA failed to provide Plaintiff with prompt medical treatment; (5) any force used was not excessive; (6) Plaintiff's conspiracy claim asserts only bare and conclusory allegations; and (7) Plaintiff's

---

[1] Unless otherwise specified, when referring to Defendant THA, the Court is also referring to Defendant Stocklas and Defendant McLaughlin.

negligence claim is based on his arrest; and, therefore, it is a malicious prosecution cause of action and not one for negligence.

## II. BACKGROUND

On the evening of March 28, 2006, at approximately 8:00 p.m., Defendant Stocklas pulled over Plaintiff.  At the time of the stop, Defendant Stocklas was on duty as a peace officer for Defendant THA, for whom he worked part time.  After pulling to the side of the road, Defendant Stocklas approached Plaintiff's vehicle and identified himself as both a THA officer and a Troy Police Officer.  *See* Affidavit of Michael C. Conway sworn to January 4, 2010 ("Conway Aff."), at Exhibit "B," at 33.  Defendant Stocklas informed Plaintiff that he had stopped him because he was operating after dark without his headlights on and also because his vehicle had an illegal window tint.  *See id.* at 27.

Initially, Plaintiff was hesitant to provide Defendant Stocklas with identification, but eventually he produced his New York State Driver's License.  *See* Affidavit of Stephen J. Rehfuss dated November 10, 2009 ("Rehfuss Aff."), at Exhibit "N," at 55, 58-59.  After obtaining the license, Defendant Stocklas returned to his THA vehicle.  Remembering that he also had his employment identification card, which identified him as a Capital District Transportation Authority bus driver, Plaintiff exited his vehicle and proceeded to walk towards Defendant Stocklas' vehicle, while shouting that he had his employee identification.  *See id.* at 63.

At this point, Defendant McLaughlin arrived on the scene and, upon seeing Plaintiff walking towards Defendant Stocklas' vehicle, twice commanded Plaintiff to return to his vehicle.

*See id.* at 68.  Plaintiff contends that, as he was walking back to his vehicle as commanded, Defendant McLaughlin sprayed him in the back of the head with pepper spray and then slammed him into the front of his car.  *See id.* at 71-72, 73.  As Defendant McLaughlin was attempting to handcuff Plaintiff, Plaintiff informed him that he was unable to put his arm behind his back because he recently had surgery performed on his shoulder.  *See id.* at 72.  At this point, Defendant McLaughlin kneed Plaintiff in the back and "snapped" his arm behind his back and handcuffed him.  *See id.*

After being taken into custody, Plaintiff was transported to the Troy Police Department, where he was held and processed.[2]  When asked if he wanted medical attention, Plaintiff declined and opted to be arraigned as soon as possible.  At the time of arraignment, Plaintiff was advised that he was being charged with three misdemeanor counts.  *See* Affidavit of Alphonso Dukes sworn to January 2, 2010 ("Dukes Aff."), at Exhibit "C."  In two of the counts, Defendant Stocklas identified himself as a Troy Police Officer.  *See id.*

Following arraignment, Plaintiff was transported to the Rensselaer County Jail, where he was held for more than two days.  Plaintiff asserts that he was denied access to a physician and the opportunity to take pain medication during this time.  Upon release, Plaintiff sought medical attention for his shoulder injury and eventually underwent surgery.

Subsequently, Plaintiff was acquitted of all of the criminal charges arising out of the

---

[2] Plaintiff claims, for the first time in his affidavit in response to Defendants' motions for summary judgment, that, when he was first brought into the Police Station, Defendant McLaughlin visited him and punched him in the stomach several times.  Plaintiff did not make this assertion in his complaint, in his criminal pretrial deposition, or at any other point.  Notably, in his deposition, Plaintiff stated that Defendant Stocklas drove him to the police station and discussed what was said between them but did not mention this alleged assault.  *See* Rehfuss Aff. at Exhibit "N," at 87-89.

incident in question.  *See* Rehfuss Aff. at Exhibit "L" (providing that all charges against Plaintiff were dismissed pursuant to New York Criminal Procedure Law § 160.50 – a dismissal in the interests of justice).[3]  On May 5, 2008, Plaintiff commenced the present action

> to redress the deprivation by Defendants of rights, privileges and immunities secured to Plaintiff by the First, Fourth and Fourteenth Amendments to the Constitution of the United States of America with the intent to deny Plaintiff his civil rights, all of which arise under Federal Law, particularly Title 42 U.S.C. Sections 1983 and 1988, and the Constitution, Laws and Statutes of the United States and the State of New York.

*See* Complaint at ¶ 1.

In its answer, Defendant Troy asserted a cross-claim against Defendant THA for indemnification, alleging that Defendant Troy had no involvement with the alleged unconstitutional conduct.


### III. DISCUSSION

A court may grant a motion for summary judgment only if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at 36 (quotation and other citation omitted).  In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all

---

[3] The document actually states that the charges were dismissed pursuant to "CPL-16.50," which does not exist.

reasonable inferences in favor of the nonmoving party.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).

**A.      Plaintiff's claims against the individual Defendants**

   ***1.  Search and seizure, false arrest and unlawful imprisonment***

   Defendants assert that the doctrine of collateral estoppel bars Plaintiff's unlawful search and seizure, false arrest, and unlawful imprisonment claims.  *See* Dkt. No. 36-1 at 11.[4]

   The Second Circuit has clearly established that federal law applies in determining the preclusive effect of a federal judgment, while "New York law [applies] in determining the preclusive effect of a New York State court judgment[.]"  *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).  Although application of either would frequently lead to the same result, "these two bodies of law do appear to diverge in some particulars[.]"  *Indus. Risk Insurers v. Port Auth. of N.Y. & N.J.,* 493 F.3d 283, 288 (2d Cir.

-----

   [4] Although Defendant THA asserts that collateral estoppel bars Plaintiff's unlawful search and seizure, false arrest, and unlawful imprisonment claims, it does not otherwise challenge the validity of these claims.

   To the extent that Defendant Troy asserts that these claims fail on the merits because the individual Defendants had probable cause, the Court must deny Defendant Troy's motion.  *See* Dkt. No. 38-1 at 18-19.  Material issues of fact exist regarding whether the individual Defendants had probable cause to arrest Plaintiff for the crimes for which he was charged.  *See Jenkins v. City of N.Y.*, 478 F.3d 76, 88 (2d Cir. 2007) (holding that, "[i]f, . . . on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims").  Moreover, if Plaintiff establishes that Defendants lacked probable cause for his arrest, then any search performed subsequent to that unlawful arrest would, likewise, have been unlawful.

-6-

2007) (citation omitted).

In *Schwartz v. Pub. Adm'r of Cnty. of Bronx,* 24 N.Y.2d 65 (1969), the New York Court of Appeals stated that a litigant may invoke the doctrine of collateral estoppel where there is an "identity of issue which has necessarily been decided in the prior action and is decisive of the present action," so long as the party against whom preclusion is asserted had a "full and fair opportunity to contest the decision now said to be controlling." *Id.* at 71. Accordingly, a party may invoke collateral estoppel to preclude a party from raising an issue "'(1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate' . . . [and (3) that is] 'decisive [in] the present action.'" *Curry v. City of Syracuse,* 316 F.3d 324, 331 (2d Cir. 2003) (quotations and footnote omitted).

"The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action[.]" *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 456 (1985) (citations omitted).

> In determining whether a party had a full and fair opportunity to litigate the issue, the New York Court of Appeals has instructed that "the various elements which make up the realities of litigation," should be explored, including "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation."

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 734 (2d Cir. 2001) (quoting *Schwartz*, 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d 725). Further, an issue is decisive of the present action "if it would prove or disprove, without more, an essential element of any of

the claims set forth in the complaint." *Curry,* 316 F.3d at 332.

In the present matter, collateral estoppel does not operate to bar any of Plaintiff's claims because he was not provided with a "full and fair opportunity to contest the decision now said to be controlling." *Schwartz*, 24 N.Y.2d at 71. Specifically, although the Troy City Court found that Defendant Stocklas and Defendant McLaughlin had probable cause to stop and then arrest Plaintiff, he was not provided with an opportunity to appeal that decision because the criminal charges were later dismissed. *See* Dkt. No. 36-5 at Exhibit "L"; *see also Rivera v. Metakes*, 216 F.3d 1073, 2000 WL 777954, *1 (2d Cir. June 15, 2000) (holding that, "[u]nder New York law, facts determined in a pretrial hearing cannot be given preclusive effect against a defendant subsequently acquitted of the charges or against whom the charges have been dismissed" (citations omitted)).

Accordingly, the Court denies Defendants' motion for summary judgment on this ground.[5]

### 2. Plaintiff's equal protection claim

Ordinarily, "[t]o state a claim for an equal protection violation, [the plaintiff] must allege that a government actor intentionally discriminated against [him] on the basis of race, national origin or gender." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999). The plaintiff must allege that he was "'selectively treated'" as "'compared with others similarly situated'" based on "'impermissible considerations'" such as race or with the "'intent to inhibit or punish the

---

[5] Although a dismissal in the interests of justice precludes a later civil action for malicious prosecution, such a dismissal does not preclude unlawful search and seizure, false arrest, or unlawful imprisonment claims. *Cf. Hygh v. Jacobs*, 961 F.2d 359, 363, 367-68 (2d Cir. 1992) (allowing false arrest verdict to stand but dismissing malicious prosecution charge because the underlying criminal charge was dismissed in the interests of justice).

exercise of constitutional rights[.]'" *Giordano v. City of N.Y.*, 274 F.3d 740, 750-51 (2d Cir. 2001) (quotation omitted).

In this case, Plaintiff has not established differential treatment that resulted from intentional and unlawful discrimination.  In neither his complaint nor his response to Defendants' interrogatories does Plaintiff allege or offer evidence to demonstrate that Defendants treated him differently from the way that they treated other similarly situated individuals.  *See* Dkt. No. 1; *see also* Rehfuss Aff. at Exhibit "K," at ¶¶ 11-12.  Further, in his response to Defendant THA's motion for summary judgment, Plaintiff fails to address Defendant THA's assertion that the Court should dismiss his equal protection cause of action; and, thus, the Court concludes that Plaintiff has abandoned this claim.  *See Rohn Padmore, Inc. v. LC Play, Inc.*, 679 F. Supp. 2d 454, 459 (S.D.N.Y. 2010) (holding that, "'[w]here one party fails to respond to an opposing party's argument that its claim must be dismissed, courts may exercise their discretion and deem the claim abandoned'" (quotation omitted)).

Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's equal protection cause of action.


### 3. Plaintiff's conspiracy claim

In his second cause of action, Plaintiff alleges that Defendants conspired together to violate his constitutional rights.  *See* Complaint at ¶¶ 34-37.[6]

To sustain a cause of action for conspiracy to violate a plaintiff's civil rights under

_____

[6] Since it is unclear whether Plaintiff is attempting to assert a section 1983 or a section 1985(3) conspiracy claim, the Court will address both.

section 1985(3), a plaintiff must allege and demonstrate that the defendants acted with racial or other class-based animus in conspiring to deprive the plaintiff of his equal protection of the laws, or of equal privileges and immunities secured by law. *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (citations omitted).  A plaintiff asserting a claim under section 1985(3) need not necessarily offer proof of an explicit agreement; a conspiracy can be evidenced circumstantially, through a showing that the parties had a "'tacit understanding to carry out the prohibited conduct.'" *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (quoting *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988)) (other citations omitted).

"'To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Benitez v. Ham*, No. 9:04-CV-1159, 2009 WL 3486379, *18 (N.D.N.Y. Oct. 21, 2009) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  "In other words, plaintiff must demonstrate that defendants . . . 'agreed' or 'reached an understanding' to violate his constitutional rights." *Porter v. Selsky*, 287 F. Supp. 2d 180, 187 (W.D.N.Y. 2003) (quotation omitted).

For both types of conspiracy claims, "[c]onclusory or vague allegations of conspiracy are insufficient to survive a motion for summary judgment." *Zaidi v. Amerada Hess Corp.*, 723 F. Supp. 2d 506, 515 (E.D.N.Y. 2010) (citing *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)). Specifically, the plaintiff must provide some factual basis supporting a meeting of the minds, such as that the defendants "entered into an agreement, express or tacit, to achieve the unlawful end[;]" the plaintiff must also "'provide some "details of time and place and the alleged effects of

-10-

the conspiracy.'""  *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (quotation and other citation omitted).

Plaintiff has not adequately pled a claim for conspiracy to deny his civil rights under either section 1983 or section 1985(3).  He fails to allege or offer any proof that Defendants agreed to, or reached an understanding to, violate his civil rights.  Moreover, as with his equal protection claim, Plaintiff failed to respond to Defendant THA's motion for summary judgment with regard to his conspiracy claim.  As such, the Court concludes that Plaintiff has abandoned this claim.  *See Rohn Padmore, Inc.*, 679 F. Supp. 2d at 459 (quotation omitted).

Based on the foregoing, the Court grants Defendants' motion with respect to Plaintiff's second cause of action for conspiracy to violate his civil rights.  Even if the Court were to find that Plaintiff had not abandoned this claim, it would fail on the merits for the reasons discussed.

### 4. Denial of prompt medical care

In his first and third causes of action, Plaintiff claims that Defendants violated his federal and New York State constitutional right to prompt medical attention.  *See* Complaint at ¶¶ 31-33, 39-41.  Defendants assert that the evidence does not support this claim.

"[A] claim for indifference to the medical needs of [a plaintiff], as a pretrial detainee in state custody, [i]s properly brought under the Due Process Clause of the Fourteenth Amendment."  *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (citation omitted).[7]  When a

---

[7] Although Plaintiff properly brought this claim under the Due Process Clause of the Fourteenth Amendment, the standard of review for such claims is the same deliberate indifference standard that courts apply to claims that convicted inmates bring under the Eighth

(continued...)

denial of medical care claim arises in the context of arrest and pretrial detainment, "the official

custodian of [the arrestee] may be found liable for violating the [arrestee's] due process rights if

the official denied treatment needed to remedy a serious medical condition and did so because of

his deliberate indifference to that need." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)

(citation omitted).  This standard includes both objective and subjective criteria, requiring the

plaintiff to show that (1)"'[he] had a "serious medical condition"'" and (2) that "'it was met with

"deliberate indifference."'" *Caiozzo*, 581 F.3d at 72 & n.4 (quotation and other citations

omitted).

"The first requirement is objective: the alleged deprivation of adequate medical care must

be "'sufficiently serious.'"" *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quotation

omitted).  Determining whether a deprivation is "sufficiently serious" requires two inquiries.  *See

id.*  First, a court must determine "whether the prisoner was actually deprived of adequate

medical care." *Id.*  Second, a court must determine "whether the inadequacy in medical care is

sufficiently serious." *Id.* 280.[8]  "This inquiry requires the court to examine how the offending

conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the

prisoner." *Id.* (citation omitted).  Some factors relevant to the seriousness of a medical condition

include (1) "whether 'a reasonable doctor or patient would find [it] important and worthy of

comment[;]'" (2) "whether the condition 'significantly affects an individual's daily activities[;]'"

---

[7](...continued)
Amendment.  *See Caiozzo*, 581 F.3d at 70 (citation omitted).

[8] In *Salahuddin*, the Second Circuit held that, "if the unreasonable medical care is a
failure to provide any treatment for an inmate's medical condition, courts examine whether the
inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citation
omitted).

and (3) "whether it causes 'chronic and substantial pain.'"  *Id.* (quotation omitted).  Thus, an

alleged deprivation is sufficiently serious where "'a condition of urgency, one that may produce

death, degeneration, or extreme pain' exists."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.

1996) (quotation omitted).

The second requirement is subjective: "the charged official must act with a sufficiently

culpable state of mind[,]" *i.e.*, deliberate indifference.  *Salahuddin*, 467 F.3d at 280 (citation

omitted).  "Deliberate indifference is a mental state equivalent to subjective recklessness, as the

term is used in criminal law." *Id.* (citation omitted).  "This mental state requires that the charged

official act or fail to act while actually aware of a substantial risk that serious inmate harm will

result." *Id.* (citation omitted).  This means that the prison official "must be subjectively aware

that his conduct creates such a risk."  *Id.* at 281 (citation omitted).

> A delay in medical treatment does not by itself violate an
> inmate[']s Eighth Amendment rights unless the delay reflects
> deliberate indifference to a serious risk of health or safety, to a
> life-threatening or fast-degenerating condition or to some other
> condition of extreme pain that might be alleviated through
> reasonably prompt treatment.

*Mitchell v. N.Y.C. Dep't of Corr.*, No. 10 CV 0292, 2011 WL 503087, *4 (S.D.N.Y. Feb. 14,

2011) (citation omitted).

Plaintiff's deposition testimony clearly indicates that Defendants' actions did not rise to

the level of deliberate indifference.  Plaintiff admits that he never told either Defendant Stocklas

or Defendant McLaughlin that he was injured at any point; he merely stated that he was in pain

and asked Defendant Stocklas to loosen the handcuffs.  *See* Rehfuss Aff. at Exhibit "N," at 86-

88.  Further, Plaintiff testified that he told a desk sergeant at the police station approximately

-13-

forty-five minutes after he arrived that he was injured and that he wished to go to the hospital. *See id.* at 87-91.  However, after the desk sergeant informed Plaintiff that, if he went to the hospital he would not be arraigned and released until the next day, Plaintiff decided to wait until after his arraignment to seek treatment.  *See id.* at 92.

After Plaintiff had been at the Troy police station for less than an hour and a half, he was brought to court to be arraigned.  *See id.* at 93.  Plaintiff was denied bail and was transported to the Rensselaer County Jail immediately following his arraignment.  *See id.* at 95-96.  Upon arrival at the Rensselaer County Jail, Plaintiff informed an unnamed employee that he needed medical attention and was sent to see a nurse.  *See id.* at 99-100.  Plaintiff remained at the Rensselaer County Jail for two days.  *See id.* at 101.

Based on this testimony, it is clear that none of the named Defendants exhibited deliberate indifference to Plaintiff's medical condition.  He was in Defendants' custody for less than two hours, and one of Defendant Troy's employees offered him treatment.  Moreover, Plaintiff's injury was not "life-threatening and fast degenerating" so as to require immediate medical attention.  *Mitchell*, 2011 WL 503087, at *4 (citation omitted). Although Plaintiff may have been in pain during his brief stint in Defendants' custody, all named Defendants acted reasonably under the circumstances.  Finally, Plaintiff admits that he never informed Defendant Stocklas, Defendant McLaughlin, or any other employee that he needed medical attention.

Based on the foregoing, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's claim for denial of prompt medical care.


### 5. Plaintiff's excessive force and assault causes of action

-14-

Plaintiff's first and third causes of action allege excessive force in violation of his New York State and Federal Constitutional rights.  *See* Complaint at ¶¶ 31-33, 39-41.  Moreover, Plaintiff's sixth cause of action alleges a state-law cause of action for assault.  *See id.* at ¶¶ 50-52.

Assault and battery claims under New York law are analogous to excessive force claims under the Fourth Amendment.  *See Cosby v. City of White Plains*, No. 04 Civ. 5829, 2007 WL 853203, *6 (S.D.N.Y. Feb. 9, 2007).  Indeed, courts evaluate assault and battery claims under New York law and excessive force claims under the Fourth Amendment pursuant to the same standards.  *See id.* (citing *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)).  A plaintiff alleging excessive force must demonstrate that the use of force was objectively unreasonable in light of the facts and circumstances confronting the officers, without regard to the officers' underlying intent or motivation.  *See Anderson v. Branen*, 17 F.3d 552, 559 (2d Cir. 1994) (citation omitted).

This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted).  "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citation omitted).

Plaintiff's allegations are sufficient to create issues of fact about the objective

-15-

reasonableness of the degree of force that Defendant McLaughlin used.  Specifically, Plaintiff

asserts that, although he did not act aggressively toward either officer and did nothing more than

exit his vehicle and walk back toward Defendant Stocklas' Housing Authority vehicle, Defendant

McLaughlin pepper sprayed him, smashed his head into the roof of his car, and wrenched his

right arm up behind his back (ripping his right rotator cuff).  *See* Dkt. No. 44 at 8.  Such

assertions clearly create issues of fact precluding summary judgment on Plaintiff's excessive

force and assault claims against Defendant McLaughlin.[9]

-----

[9] In *Jones v. Parmley*, 465 F.3d 46 (2d Cir. 2006), the Second Circuit clarified its prior decision in *Atkins v. New York City*, 143 F.3d 100 (2d Cir. 1998), and reiterated that the existence of an unlawful seizure does not necessarily mean that any use of force during such seizure is *per se* excessive or unlawful.  *See Jones*, 465 F.3d at 62.  More specifically, in *Jones*, the court rejected the argument that force used during an arrest without probable cause is *per se* excessive and, instead, emphasized that the same reasonableness standard articulated in *Graham* applied to those situations as well.

> There was . . . no need for this Court in *Atkins* to reach the
> question of whether any force used in an arrest lacking probable
> cause is *per se* excessive.  Such a construction would read the
> highly fact-specific situation in which *Atkins* arose too broadly
> because it would appear to suggest that any force employed by a
> police officer would be unlawful so long as probable cause did not
> exist, even if the detainee had threatened the officer with
> significant harm.  We are further mindful that the Supreme Court
> held in *Graham* that "all claims that law enforcement officers have
> used excessive force . . . should be analyzed under the . . .
> 'reasonableness' standard" of the Fourth Amendment, thereby
> establishing a general requirement.  490 U.S. at 395, 109 S. Ct.
> 1865 (emphasis in original).  The *Atkins* court clearly did not
> intend to create or substitute a new standard for arrests lacking
> probable cause, and the reasonableness test established in *Graham*
> remains the applicable test for determining when excessive force
> has been used, including those cases where officers allegedly lack
> probable cause to arrest.

*Id.*

(continued...)

On the other hand, Plaintiff does not allege that Defendant Stocklas failed to intervene or that he used any force other than the force involved in handcuffing Plaintiff.[10]  *See* Dkt. No. 42 at ¶ 15.  In fact, all of Plaintiff's allegations regarding the use of force relate to Defendant McLaughlin's, not Defendant Stocklas', use of force against him.  *See id.* at ¶¶ 12-18.  Therefore, the Court grants Defendant Troy's and Defendant THA's motions for summary judgment with respect to Plaintiff's excessive force and assault causes of action against Defendant Stocklas.

### 6. Plaintiff's due process claim

In Plaintiff's first and third causes of action he alleges a denial of his due process rights in connection with his March 28, 2006 arrest and subsequent detention.  *See* Complaint at ¶¶ 31, 39.  Defendants assert that Plaintiff's due process claims fail as a matter of law because there was probable cause to support Plaintiff's arrest and because the arresting officers acted reasonably under the circumstances.  *See* Dkt. No. 36-1 at 15.

"Due process requires probable cause for an arrest, and when police officers acting in bad faith make an arrest without probable cause, the person arrested has suffered a deprivation of

---

[9](...continued)
In the present matter, Plaintiff does not merely claim that any force that Defendant McLaughlin used was unreasonable because the arrest was illegal but also asserts a separate excessive force claim.  As noted, the Court finds that Plaintiff has set forth facts, which, if believed, could establish that the amount of force that Defendant McLaughlin used was objectively unreasonable.  Accordingly, Plaintiff's excessive force and illegal arrest claims do not merge.

[10] In fact, Plaintiff's affidavit does not make clear whether Defendant Stocklas was even the one who handcuffed him.  *See* Dkt. No. 42 at ¶ 15.  For purposes of this Memorandum-Decision and Order, however, the Court has assumed that Defendant Stocklas did, in fact, handcuff Plaintiff.

liberty without due process of law." *United States v. McDermott*, 918 F.2d 319, 325 (2d Cir. 1990). "Where . . . probable cause has been clearly established, there can be no claim for denial of either the procedural or substantive right to due process." *Harris v. Cnty. of Nassau*, 581 F. Supp. 2d 351, 357 (E.D.N.Y. 2008) (citations omitted).

In the present matter, factual issues exist that preclude granting summary judgment with regard to this claim. Although Defendants claim that Plaintiff failed to return to his car when Defendant McLaughlin ordered him to do so, Plaintiff disputes this fact. Without this failure to obey, Defendants only had probable cause to issue Plaintiff a traffic ticket for operating his vehicle without headlights; they did not have probable cause to arrest Plaintiff.[11]

Accordingly, the Court denies Defendants' motion for summary judgment with regard to Plaintiff's due process causes of action.

### 7. Qualified immunity

Defendants claim that Defendant Stocklas and Defendant McLaughlin are entitled to qualified immunity with regard to all of Plaintiff's constitutional claims. *See* Dkt. No. 36-1 at 21.

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit"). "[T]he salient question [in

---

[11] Although Plaintiff admits that his headlights were off, it is clear that such a minor traffic infraction would not warrant an arrest.

determining qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As qualified immunity is an affirmative defense, the burden of pleading it falls on the defendants. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that "defendants bear the burden of showing that the challenged act was objectively reasonable" (citation omitted)).

The qualified immunity determination consists of two steps, which a court may consider in either order. *See Seri v. Bochicchio*, 374 Fed. Appx. 114, 116 (2d Cir. 2010) (citation omitted). The first step is to determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009) (citations omitted). The second is a determination of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As discussed above, there are a multitude of factual issues that make granting qualified immunity inappropriate at this time. If the Court believes Plaintiff's version of the facts, Defendant Stocklas and Defendant McLaughlin lacked probable cause to place Plaintiff under arrest, detain him, or search his person and vehicle. Moreover, viewing the facts in the light most favorable to Plaintiff, a reasonable factfinder could conclude that the force that Defendant McLaughlin used was objectively unreasonable. Therefore, the Court denies Defendants' motions for summary judgment on this ground.

**B.      Municipal liability under § 1983**

*1. Plaintiff's claims against Defendant Troy[12]*

Defendant Troy asserts that it is entitled to summary judgment because there is no

evidence establishing municipal liability pursuant to 42 U.S.C. § 1983.  Specifically, Defendant

Troy asserts that there is no proof of an unconstitutional municipal policy or custom and that,

even if the Court were to find that Defendant Stocklas was working as a City of Troy employee

at the time of the alleged violations, which he was not, he was not a policy-making official.  *See*

Dkt. No. 38-1 at 4-7.  Furthermore, Defendant Troy asserts that Defendant THA is a separate

legal entity and that Defendant THA's officers have the power to make traffic stops and arrests.

*See id.* at 7-8.

To the contrary, Plaintiff asserts that he has sufficiently established municipal liability

against Defendant Troy because (1) he demonstrated that policymakers chose to ignore

Defendant Stocklas' actions and (2) he suffered an "'unusually brutal or egregious beating

administered by a group of municipal employees[,]'" which warrants an inference of inadequate

training or supervision amounting to deliberate indifference.  *See* Dkt. No. 44 at 10-11.

Pursuant to *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), and its

progeny, a municipality cannot be held liable pursuant to section 1983 under a theory of

*respondeat superior*.  *See id.* at 691; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 479

(1986) (citation omitted).  Rather, there must be a "direct causal link between a municipal policy

or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378,

---

[12] Since there is no question that Defendant McLaughlin was not an employee of
Defendant Troy, the Court has focused only on Defendant Stocklas' conduct in this section.

385 (1989).  It is well-settled that a plaintiff may establish this required causal link by showing that a defendant was deliberately indifferent to the training, supervision, or discipline of its employees.  *See Amnesty Am.*, 361 F.3d at 127 (citation omitted).  In this regard, the plaintiff "must establish [the defendant's] deliberate indifference by showing that 'the need for more or better supervision to protect against constitutional violations was obvious'" and that the defendant "made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct." *Id.* (quotation omitted).

Although Plaintiff's complaint succinctly states one of the core legal concepts animating *Monell* liability, *i.e.*, that all named Defendants acted "with malice toward and/or reckless disregard of and/or deliberate indifference to Plaintiff's rights[,]" *see* Complaint at ¶ 32, it fails to accompany this rote recitation with factual assertions of any kind.  Moreover, the sparse facts that elsewhere make their way into the pleading, and which outline a single, detached incident of misconduct by a single, non-policy level officer, *i.e.*, Defendant Stocklas, in no way suggest that municipal policymakers made a deliberate choice to turn a blind eye to unconstitutional conduct. *See Amnesty Am.*, 361 F.3d at 128; *see also Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (holding that "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy" (citations omitted)), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).  Moreover, although Plaintiff alleges that all Defendants acted with deliberate indifference, he fails to allege that Defendant Troy showed deliberate indifference through either its inaction regarding the conduct in question or through its failure to train and supervise its employees adequately.  *See*

*Bradley v. City of N.Y.*, No. 08-CV-1106, 2009 WL 1703237, *3 (E.D.N.Y. June 18, 2009)

(holding that the "[c]omplaint's conclusory, boilerplate language – that the City 'fail[ed] to

adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into

effect appropriate rules and regulations applicable to the duties and behavior' of its employees . .

. – is insufficient to raise an inference of the existence of a custom or policy, let alone that such a

policy caused Plaintiff to be arrested without probable cause" (internal citation omitted)).

   In his affidavit in response to the present motions, Plaintiff's attorney makes conclusory

allegations and raises issues not entirely relevant to the issue at hand.  *See* Dkt. No. 41 at ¶¶ 86-

92.  Although it appears that Defendant Stocklas may have failed to fill out "the Troy Police

Department's control/restraint report," his failure to do so and the fact that he was not

reprimanded for this failure does not establish the deliberate indifference required to find

Defendant Troy liable.  Relatedly, nearly all of Plaintiff's allegations concerning the force used

state that Defendant McLaughlin, not Defendant Stocklas, was the one who used excessive force

(or any force at all).  *See* Dkt. 36-5 at 71-72; Dukes Aff. at ¶¶ 10, 12-15.  Based on Plaintiff's

deposition testimony, it appears that the only force Defendant Stocklas used was when he

assisted Defendant McLaughlin in handcuffing Plaintiff and when he refused to loosen the

handcuffs prior to reaching the station.  Moreover, although Plaintiff alleges that, upon arriving

at the police station garage, Defendant McLaughlin punched him in the chest several times,

Plaintiff does not allege a failure to intervene against Defendant Stocklas.  *See* Dukes Aff. at

¶ 19.

   Further, although Plaintiff correctly asserts that a municipality can be held liable for an

isolated incident, such as an "unusually brutal or egregious beating administered by a group of

municipal employees[,]" *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980) (citations omitted),

the alleged conduct does not rise to this level. The *Turpin* court went on to hold that, "absent

more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a

policy could not ordinarily be inferred from a single incident of illegality such as a first arrest

without probable cause or with excessive use of force." *Id.* (citations omitted). Here, there was

not a "group of municipal employees," and the alleged beating was not sufficiently egregious to

warrant such a finding – especially when considering that the only City of Troy employee,

Defendant Stocklas, employed almost no force.

Based on the foregoing, the Court grants Defendant Troy's motion for summary judgment

with respect to Plaintiff's § 1983 claims.[13]

### 2. Plaintiff's **Monell** claims against Defendant THA[14]

Plaintiff asserts that summary judgment is inappropriate because "there is ample proof

before this Court that [Defendant THA] grossly ignored what took place at the traffic stop in

question – in what could reasonably be seen as an effort to disregard the constitutional violations

---

[13] Plaintiff has not alleged that he filed a notice of claim with respect to his state-law claims. In its answer, Defendant Troy raises an affirmative defense asserting that Plaintiff failed to comply with the General Municipal Law. In its motion for summary judgment, however, Defendant Troy did not move to dismiss Plaintiff's state-law claims on this ground.

[14] The Court notes that Defendant THA is treated as a municipality for purposes of section 1983. *See Ramos v. City of N.Y.*, No. 96 CIV. 3787, 1997 WL 410493, *3 (S.D.N.Y. July 22, 1997) (holding that, "for the New York City Housing Authority to be held liable, [the plaintiff] must meet the standard described in *Monell v. Department of Soc. Serv. of the City of New York*, 436 U.S. 658, 694 (1978)" (citation omitted)). Further, a plaintiff bringing suit against a municipal housing authority must comply with the Notice of Claim requirements in the New York General Municipal Law for any pendent state-law claims. *See Mercier v. Mun. Hous. Auth. of City of Schenectady*, 133 A.D.2d 990, 991 (3d Dep't 1987).

– and cover-up the illegal conduct." *See* Dkt. No. 44 at 11.  Plaintiff asserts that Defendant

THA's Director of Public Safety, Mr. Mason, learned about the incident in question soon after it

took place, yet neither he nor Defendant Stocklas nor Defendant McLaughlin prepared a use of

force report as Defendant THA's policy required.  *See* Dkt. No. 41 at ¶¶ 76-77.  Moreover,

Plaintiff asserts that it was uncommon for Defendant THA's officers to follow the use of force

policy and that there was no formal training on when it was appropriate to use pepper spray, yet

Defendant THA provided pepper spray to every peace officer whom it employed.  *See id.* at ¶ 80.

     As discussed, it is well-settled that a plaintiff may establish the required causal link

between a defendant municipality and its employee's actions by showing that the defendant was

deliberately indifferent to the training, supervision, or discipline of its employees.  *See Amnesty*

*Am.*, 361 F.3d at 127 (citation omitted).

     Plaintiff correctly asserts that his allegations are sufficient to survive summary judgment

on the issue of whether Defendant THA failed to train, supervise, and discipline its employees

properly.  Director Mason's failure either to fill out a use of force report or to require Defendant

Stocklas or Defendant McLaughlin to fill out such a report demonstrates a possible conscious

disregard and potential ratification of unconstitutional actions on the part of Defendant THA.

Moreover, Defendant THA has not established that it punished Defendant Stocklas or Defendant

McLaughlin for their failure to follow Defendant THA's use of force policy, which could be

interpreted as those individual Defendants' attempt to avoid the investigation that would have

resulted if they had filed such a use of force report.  Finally, Plaintiff asserts that Defendant

THA's peace officers are all provided with pepper spray, but are not provided with any training

on when its use is appropriate.  These allegations create issues of fact regarding whether

Defendant THA was deliberately indifferent to the training, supervision, or discipline of its employees.

Based on the foregoing, the Court denies Defendant THA's motion for summary judgment with respect to Plaintiff's *Monell* claim.


**C.      Plaintiff's remaining state-law claims[15]**

*1. Plaintiff's negligence claim*

In his fifth cause of action, Plaintiff claims that Defendants were "negligent in the manner in which they treated and handled [him]."  *See* Complaint at ¶ 46.  In his sixth cause of action, Plaintiff alleges that Defendants intentionally caused him harm.  *See id.* at ¶¶ 50-51.  Defendant THA asserts that Plaintiff's negligence cause of action fails as a matter of law because "a party cannot allege intentional conduct and seek recovery based on negligence, or maintain a negligence cause of action with respect to an arrest."  *See* Dkt. No. 36-1 at 16.  Moreover, Defendant THA claims that, under New York law, when a negligence cause of action is based on an arrest, the plaintiff must resort to the traditional remedies of false imprisonment and malicious prosecution.  *See id.* at 17.

To establish a *prima facie* case of negligence, a plaintiff must show (1) a duty that the defendant owes to the plaintiff, (2) a breach of that duty, and (3) an injury proximately resulting therefrom.  *See Solomon by Solomon v. City of N.Y.*, 66 N.Y.2d 1026, 1027 (1985) (citation

---

[15] As previously discussed, Plaintiff also asserted state-law assault and battery, due process, unlawful search and seizure, false arrest, unlawful imprisonment, denial of prompt medical care and equal protection causes of action.

omitted).  If the plaintiff alleges facts that support a claim for excessive force or assault and battery, "he may not also base a claim of negligence on the same conduct."  *Morgan v. Nassau Cnty.*, No. 03-CV-5109, 2009 WL 2882823, *19 (E.D.N.Y. Sept. 2, 2009) (citations omitted).

Aside from asserting that he is not collaterally estopped from raising this claim and that there are issues of fact precluding summary judgment, Plaintiff has failed to respond to this aspect of Defendant THA's motion.  Based on the complaint's language, Plaintiff's negligence claim is predicated on the same conduct Plaintiff alleges in support of his excessive force and assault causes of action.  Accordingly, the Court grants Defendants' motions with respect to Plaintiff's fifth cause of action for negligence.


### 2. Was Defendant Stocklas acting as a THA peace officer or as a Troy City Police Officer, or in both capacities, at the time of the incident?[16]

In the underlying criminal action, Judge Maier determined that, on the night in question, Defendant Stocklas was acting as an employee of both Defendant Troy and Defendant THA.  As such, Defendant THA asserts that Defendant Troy is liable for any damages that Plaintiff may be awarded in this matter.  Defendant Troy asserts that Judge Maier's finding does not have preclusive effect.  *See* Dkt. No. 38-1 at 12.  Defendant Troy claims that it and the County District Attorney's Office are not in privity with one another; and, therefore, it was not a party to Plaintiff's criminal proceeding.  *See id.*  Defendant THA asserts that the Court should dismiss Defendant Troy's cross-claim because, during the night in question, Defendant Stocklas was

---

[16] Although the Court has already dismissed all of Plaintiff's federal claims against Defendant Troy, this discussion is still relevant to Plaintiff's remaining state-law claims and Defendant Troy's and Defendant THA's cross-claim for indemnification/contribution.

acting in his capacity as both a Troy Police Officer and as a THA patrolman.  *See* Dkt. No. 36-1 at 23.  Further, Defendant THA asserts that the Troy City Court already decided this issue.  *See id.*

To determine whether Defendant Stocklas was acting in his role as a Defendant THA peace officer, a Defendant Troy police officer, or both, the Court must consider both "'the capacity in which the off-duty police officer was functioning when the officer initially confronted the situation and . . . the manner in which he . . . conducted himself . . . from that point forward.'"  *United States v. Couch*, 378 F. Supp. 2d 50, 55 (N.D.N.Y. 2005) (quotation and other citations omitted).  Moreover, the Court must consider whether Defendant Stocklas had the authority to perform the traffic stop in question and subsequent arrest pursuant to his authority as a Defendant THA peace officer.  *See People v. Williams*, 4 N.Y.3d 535, 537-38 (2005).

Under New York law, a "peace officer" has the powers, among others, to make warrantless arrests and to issue appearance tickets and simplified traffic informations whenever acting pursuant to his special duties.  *See* N.Y. Crim. Proc. Law §§ 2.10(58), 2.20(1)(a)-(e).[17]

---

[17] Some of the powers afforded to peace officers include

> (a) The power to make warrantless arrests pursuant to section 140.25 of this chapter.

> (b) The power to use physical force and deadly physical force in making an arrest or preventing an escape pursuant to section 35.30 of the penal law.

> (c) The power to carry out warrantless searches whenever such searches are constitutionally permissible and acting pursuant to their special duties.

> (d) The power to issue appearance tickets pursuant to subdivision

(continued...)

"Peace officers" are officials "who perform[ ] a law enforcement function for an agency that does not have policing as its central mission."  Peter Prieser, Practice Commentaries, N.Y. Crim. Proc. Law § 2.10 (McKinney 2003).  Among the officers designated as "peace officers" under the Criminal Procedure Law are "[u]niformed members of the security force of the Troy housing authority[.]"  *See* N.Y. Crim. Proc. Law        § 2.10(58).

Under section 31 of the New York Public Housing Law, the territorial jurisdiction of a city's public housing authority is conterminous with the territorial limits of that city.  *See* N.Y. Pub. Hous. Law § 31.  Moreover, New York Criminal Procedure Law provides that

> [t]he "geographical area of employment" of any peace officer employed as such by an agency of a county, city, town or village consists of (i) such county, city, town or village, as the case may be, and (ii) any other place where he is, at a particular time, acting in the course of his particular duties or employment[.]

N.Y. Crim. Proc. Law § 140.25(5)(b).

---

[17](...continued)
> three of section 150.20 of this chapter, when acting pursuant to their special duties. . . .
>
> (e) The power to issue uniform appearance tickets pursuant to article twenty-seven of the parks, recreation and historic preservation law and to issue simplified traffic informations pursuant to section 100.25 of this chapter and section two hundred seven of the vehicle and traffic law whenever acting pursuant to their special duties.

*See* N.Y. Crim. Proc. Law § 2.20(1)(a)-(e).

Moreover, the statute provides that "a peace officer acts pursuant to his special duties when he performs the duties of his office, pursuant to the specialized nature of his particular employment, whereby he is required or authorized to enforce any general, special or local law or charter, rule, regulation, judgment or order."  N.Y. Crim. Proc. Law § 2.20(2).

-28-

At this point, it is unclear whether Defendant THA peace officers are provided with traffic summons through Defendant THA or if all Defendant THA peace officers simply issue Troy Police Department traffic tickets.  Moreover, it is unclear whether every arrest that a Defendant THA peace officer makes is processed at the Troy Police Department and, if so, the nature of the cooperation agreement between the two agencies.  Moreover, Defendant THA asserts that "[i]t was common practice for Officer Stocklas, while on-duty as a THA patrolman, to respond to calls, make arrests and provide backup as a Troy Police Officer."  *See* Dkt. No. 36-1 at 23 (citation omitted).  Finally, Plaintiff claims that Defendant Stocklas stated that he was both a Defendant Troy police officer and a Defendant THA peace officer.  Therefore, the Court denies Defendant Troy's motion for summary judgment regarding this issue.[18]

**D.      Defendant THA's motion for summary judgment with regard to Defendant Troy's cross-claim and Defendant Troy's motion for summary judgment on its cross-claim**

Defendant Troy asserted a cross-claim against Defendant THA, claiming that any liability imposed on it is assignable to its co-Defendants.  Defendant THA asserts that the Court should dismiss this cross-claim because there are no issues of material fact regarding the fact that, on the night in question, Defendant Stocklas was acting in his capacity as both a Defendant Troy police officer and a Defendant THA peace officer.  *See* Dkt. No. 36-1 at 22-23.  Further, Defendant THA claims that the Troy City Court already decided this issue and held that Defendant Stocklas was acting in this dual capacity.  *See id.* at 23.

---

[18] Although the Court has dismissed Plaintiff's *Monell* claims against Defendant Troy, Plaintiff still has several state-law causes of action that could subject Defendant Troy to liability. *See Raysor v. Port Auth. of N.Y. & N.J.*, 768 F.2d 34, 38 (2d Cir. 1985) (dismissing section 1983 claims under *Monell* but permitting state-law claims based on *respondeat superior* to proceed (citations omitted)).

As previously discussed, collateral estoppel does not apply to this state-court proceeding because the charges were eventually dismissed against Plaintiff, thereby precluding appellate review.  Further, as discussed, issues of fact exist as to whether Defendant Stocklas was working in a dual capacity on the night in question.  Since it is premature for the Court to determine whether Defendant Stocklas was working for both Defendant THA and Defendant Troy or just Defendant THA at the time of the arrest and subsequent events, it is also premature for the Court to determine the merits of Defendant Troy's cross-claim for indemnification/contribution.

Accordingly, the Court denies both Defendant THA's motion for summary judgment on Defendant Troy's cross-claim and Defendant Troy's motion for summary judgment on its cross-claim.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Troy's motion for summary judgment is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Defendant THA's motion for summary judgment is **GRANTED in part** and **DENIED in part**;[19] and the Court further

--------

[19] As a result of this Memorandum-Decision and Order, the only remaining claims are (1) Plaintiff's unlawful search claims against Defendants Stocklas and McLaughlin under federal and New York law; (2) Plaintiff's excessive force claim against Defendant McLaughlin under federal and New York law; (3) Plaintiff's false arrest/unlawful seizure claims against Defendants Stocklas and McLaughlin under federal and New York State law; and (4) Plaintiff's *Monell* claim

(continued...)

**ORDERS** that Plaintiff shall inform the Court in writing within **ten days** of this Memorandum-Decision and Order whether he has complied with New York General Municipal Law's Notice of Claim requirement with regard to his state-law claims; and, if so, he shall file a copy of that Notice of Claim; and the Court further

**ORDERS** that, if Plaintiff fails to file the necessary documents to demonstrate that he has complied with the Notice of Claim requirement within the required time frame, the Court will dismiss the remaining pendent state-law claims; and the Court further

**ORDERS** that Plaintiff's counsel shall initiate a telephone conference, using a professional telephone conferencing service, with the Court and opposing counsel on **Tuesday, April 12, 2011, at 9:45 a.m.**, to schedule the trial of this matter.

**IT IS SO ORDERED.**

Dated: March 30, 2011
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[19](...continued)
against Defendant THA.